```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x
```

DAVID TELLERIA,

                Plaintiff,      **MEMORANDUM & ORDER**
                                                     21-CV-433 (EK)

       -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

```
-----------------------------------x
```
ERIC KOMITEE, United States District Judge:

       Plaintiff David Telleria challenges the Social Security Administration's denial of his claim for disability insurance benefits.  Before the Court are the parties' cross-motions for judgment on the pleadings.  For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.

## I.  Background

### A.  Procedural Background

       In September 2018, Telleria applied for disability benefits, alleging a disability onset date of August 27, 2018.  Administrative Tr. ("Tr.") 21, ECF Nos. 8 to 8-2.  The agency denied his claim.  Tr. 21.  On October 15, 2019, administrative law judge ("ALJ") Laureen Penn held a hearing on Telleria's claim.  Tr. 21.  The ALJ concluded that Telleria was not disabled and therefore not entitled to disability benefits.  Tr.

21-29. The Appeals Council denied Telleria's request for review of the ALJ's decision, rendering it final. Tr. 1. Telleria timely sought review of that decision in this Court. ECF No. 1.

**B.  The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant has engaged in substantial gainful activity since the alleged onset date. *Id.* § 404.1520(a)(4)(i), (b); *see also id.* § 404.1571. If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d);

20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, ALJ Penn determined that Telleria had not engaged in substantial gainful activity since the alleged onset date. Tr. 23. The ALJ also determined that Telleria suffered from the following "severe impairments": degenerative disc disease of the lumbar spine with spondylolysis, spondylolisthesis, stenosis, neurogenic claudication, radiculopathy, strain, and degenerative joint disease; degenerative disc disease of the cervical spine with disc herniation, degenerative disc disease, radiculopathy, and strain/sprain from traction injury; right shoulder internal derangement; ulnar nerve lesion/bilateral ulnar sensory neuropathy; and obesity. Tr. 23. However, ALJ Penn determined that none of these severe impairments rose to the level of a Listed Impairment. Tr. 24.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Telleria had the RFC to perform "sedentary work" with limitations. Tr. 24. Those limitations included that Plaintiff could lift and/or

carry ten pounds occasionally and eight pounds frequently; could stand or walk two hours and sit six hours; could only occasionally climb ramps or stairs, balance, stoop, kneel, or operate foot controls with the lower extremities; could not crouch, crawl, or climb ladders, or scaffolds; and could not be exposed to hazards or extreme cold or vibration.  Tr. 24.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work."  20 C.F.R. § 404.1520(f).  Here, the ALJ found that Telleria could not perform his past work as a boiler mechanic, maintenance supervisor, computer support specialist, building maintenance-repairer, or driver.  Tr. 27.  At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  The ALJ determined that Telleria could perform such jobs, including as a final assembler, document preparer, charge account clerk, and order clerk.  Tr. 28.  Given that conclusion, the ALJ concluded that Telleria was not disabled.  Tr. 29.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence

4

supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[1]

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## II. Discussion

Plaintiff raises one argument on appeal: he argues that the ALJ's RFC determination was not supported by substantial evidence because she only partially credited the opinion of one of Plaintiff's treating physicians, Dr. Clarke. Dr. Clarke, who examined Plaintiff in August 2018 in connection with a workers compensation claim, stated in his medical report from that visit that Plaintiff had a "temporary total-100% disability," Tr. 330, including total restriction on his ability to lift, push, pull, carry, reach, bend, and operate machinery, and to sit, stand, or walk for prolonged periods. Tr. 308. Plaintiff's claim lacks merit.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

The Social Security Administration repealed its "treating physician rule" prior to Telleria's application for benefits.[2] Under the revised regulations applicable here, the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 20-CV-0261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Instead, the SSA commits itself more generally to "articulate in our determination or decision how persuasive we find all of the medical opinions" in the case record. 20 C.F.R. § 404.1520c(b).

The new regulations require an ALJ to evaluate medical opinions and findings based on factors including, among others: (1) their supportability (i.e., the extent to which a source explains his or her opinion and supports it with objective medical evidence); (2) consistency (the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3) the source's relationship with the claimant (including the length of the relationship and frequency of

---

[2] As noted above, Plaintiff filed his application with the SSA on September 7, 2018. The treating physician rule was repealed effective March 27, 2017, and replaced by new regulations set forth in 20 C.F.R §§ 404.1520c and 416.920c. *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021).

6

visits), and (4) the source's specialization (education and training). 20 C.F.R. §§ 404.1520c(c).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain her consideration of them. *Id.* The regulation does not explicitly require the ALJ to explain her consideration of the remaining factors. *Id.* These are not especially formalistic requirements.[3] In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision," so long as she has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, ALJ Penn based her RFC determination on a comprehensive review of the record evidence as a whole. Tr. 24-27. The ALJ discussed, for example, Telleria's symptoms and medical records prior to his laminectomy and lumbar fusion surgery, which occurred on March 29, 2019. Tr. 26. The ALJ noted that pre-operation, Plaintiff had decreased sensation in the left leg, decreased reflexes, minimal range of motion, and a

---

[3] Even when the treating physician rule applied, an ALJ was still free to discount a treating physician's opinion in appropriate circumstances, as long as he provided "good reasons" for doing so. *E.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

7

mildly positive straight leg raise test. Tr. 26. The ALJ also discussed the immediate post-operative period, during which Plaintiff felt improvement, but still showed weakness on physical therapy and occupational therapy evaluations and needed extensive assistance with activities of daily living. Tr. 26. Finally, the ALJ discussed post-surgery improvement after Plaintiff's discharge from skilled care; the ALJ noted that Plaintiff showed "significant improvement," including decreased pain after surgery and only mild to moderate pain in July 2019. She also noted that, though he had spasms, painful range of motion, and mildly positive straight leg raise testing, his sensory examination was normal. She noted that Plaintiff "was expected to improve with a new course of physical therapy." Tr. 26.

ALJ Penn observed that Dr. Clarke's opinions, stated in his medical report after he examined Plaintiff, appeared to be based heavily on Plaintiff's pre-operative functioning and were not supported by post-operative care records. Tr. 27, 326-30. Indeed, Dr. Clarke's records were based on one examination of Plaintiff, two days after Plaintiff's date of onset of disability and seven months before his surgery. Dr. Clarke indicated in his medical report that Plaintiff had close to one-hundred-percent restriction on almost all activities; could not lift, push, pull, or carry anything heavier than seven to ten

8

pounds; and could not climb ladders, crawl, stoop, crouch, or reach forward or overhead. Tr. 37, 326-27, 330. As the ALJ observed, Dr. Clarke's opinion was at odds with Plaintiff's post-surgery progress. In addition, Dr. Clarke's call for near-total restrictions on numerous activities was not supported by his *own* pre-surgery records, which showed that Plaintiff had full motor strength in his upper extremities. Tr. 301.

The ALJ also noted that the record showed improvement by Plaintiff after his surgery, and that other medical professionals suggested less severe restrictions than Dr. Clarke. For example, the post-operative care records of Dr. Sushil Basra, an orthopedic surgeon who performed Plaintiff's surgery, and saw Plaintiff before and after the surgery, Tr. 441-47, showed improvement in the months following Plaintiff's operation. In April 2019, Plaintiff's pain level had decreased from 10/10 prior to surgery to 4/10 after, *see* Tr. 1092; in May 2019, his pain level was 6/10, but this increase from was attributed in part to a fall Plaintiff experienced two days before the exam. Tr. 1085, 1089. Although Plaintiff had lumbar paraspinal muscle spasms and tenderness, in both May and July 2019 he had full motor strength in the lower extremities, normal sensation, and an antalgic gait with the assistance of a cane. Tr. 1081-82, 1086-87. In May 2019, Dr. Basra concluded that Plaintiff should not bend at the waist, lift greater than ten

9

pounds, sit for prolonged periods of time, or drive.  Tr. 1093. In July 2019, Plaintiff reported his pain at a 5/10, and Dr. Basra noted only "mild to mod[erate] lumbar pain."  Tr. 1080. In his July 2019 notes, Dr. Basra specified no activity restrictions, and prescribed physical therapy to "increase mobility, decrease pain, and increase flexibility."  Tr. 1083. Reviewing these records, the ALJ concluded that they showed "improvement in strength" and "improvement in pain to the mild or moderate level."  Tr. 27.  The record was, in this way, inconsistent with Dr. Clarke's findings of total restriction in numerous activities.

The ALJ also noted that Dr. Clarke's opinion was inconsistent with certain *pre*-surgery records.  For example, a state consultive examiner, Dr. Khurana, reviewed Plaintiff's file in November 2018 and opined that Plaintiff *could* perform sedentary work, except with several exertional limitations. These included that he could lift and carry ten pounds only occasionally, and under ten pounds frequently; was limited in his ability to push and pull with his lower extremities; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and could never climb ladders or scaffolds. Tr. 75-76.  ALJ Penn found Dr. Khurana's RFC assessment to be "more persuasive" than Dr. Clarke's because it was more

10

consistent with post-operative records showing improvement. Tr. 27.

In sum, the ALJ properly resolved the conflicts in the medical evidence, weighing Dr. Clarke's opinion against other medical records indicating Plaintiff's condition. In recognition of Plaintiff's serious but manageable impairments, the ALJ limited Plaintiff's RFC to sedentary work with limitations. This assessment reflects a careful balancing of Plaintiff's abilities and limitations and is supported by substantial evidence.

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Telleria's motion. The Clerk of Court is respectfully requested to enter the judgment and close the case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   August 24, 2022
         Brooklyn, New York